Considered by MORRIS, MURDOCK, and SIEFKIN.

---

COMMERCIAL ELECTRICAL SUPPLY CO., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8827, 15973.  Promulgated October 25, 1927.

1. Additional compensation paid to employees in the form of bonuses *held* to be deductible as business expense for the year in which authorized and paid.

2. Petitioner received the net sum of $4,370.37 in 1918 as compensation for loss of profits in prior years. On the facts, *held* that this amount represents taxable income for the year in which received.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Bruce A Low, Esq.*, for the respondent.

These are proceedings for the redetermination of deficiencies in income and profits taxes for the fiscal years ended January 31, 1919 (Docket No. 8827), and January 31, 1920 (Docket No. 15973), in the amounts of $8,798.01 and $9,067.63 respectively. On motion of petitioner, the proceedings were consolidated for hearing and decision. Petitioner assigns as error (1) the refusal of respondent to allow as

deductions from income for the years involved certain amounts paid by petitioner to its employees as bonuses or additional compensation for services, and (2) the action of respondent in adding to income for the fiscal year ended January 31, 1919, the sum of $4,370.37 alleged to have been received by petitioner in May, 1918, as damages in connection with the settlement of certain litigation.

### FINDINGS OF FACT.

Petitioner is a Missouri corporation with its principal office at St. Louis, and is engaged in the wholesale electrical supply business. All of petitioner's stock was owned originally by three brothers, Wm. H., Robert E., and Louis Nolker. The last named individual died prior to the taxable years on appeal, and during said years Wm. H. Nolker and Robert E. Nolker were the sole directors of the corporation. Petitioners had an average of approximately 75 employees engaged in clerical work and handling stock, to whom fixed salaries were paid, and to whom for certain years additional compensation was paid in the form of bonuses. The first year for which bonuses were paid was the fiscal year ended January 31, 1918. Beginning with 1917 there was an unusual demand for help and the employees of the petitioner made frequent requests for increases in salaries, which petitioner found it necessary to grant in order to keep them in its service. This situation was unsatisfactory, and petitioner decided to discontinue salary increases. Accordingly, in the fall of 1917, the employees were informed that there would be no more increases in salaries, but that a bonus would be paid to them at the end of the year.

During each of the fiscal years ended January 31, 1919, and January 31, 1920, the matter of the bonus to be paid to the employees was frequently discussed informally by the two Nolker brothers, but no formal action was taken by the board of directors with respect to the amount of the bonus to be paid for each year, prior to the close of that year. Formal action fixing the amount of the bonus was taken by the board of directors after the close of each fiscal year, as soon as the auditor had informed the directors of the approximate amount of profits disclosed by the books for the preceding year. Incidental to this procedure was the provision that the employees would receive the bonus allotted only if in the employ of petitioner at the times scheduled for payment. During each current year, the employees were informed that a bonus would be paid but they were given no information as to the amount thereof, other than that if the business was prosperous it would be a liberal amount.

At a meeting of the board of directors of petitioner, held on March 13, 1918, the following action was taken, as recorded in the minutes:

11340°—28——65

Upon motion the following increases in salary were ordered effective March 1st, 1918 as applying to monthly wage schedule and March 4th, 1918 as applying to weekly wage schedule. Honorariums, as noted, were duly approved and made payable to employees of record on the following dates: one-eighth of the total amount on the 15th and last days of the months of March, June, September and December, 1918.

Then followed a schedule showing honorariums in the aggregate amount of $4,326.

At a meeting of the directors held March 4, 1919, the following action was taken:

Upon motion the directors unanimously approved of salaries and wages effective March 1, 1919 and declared honorariums payable to employees of record in equal installments (one-eighth of amount specified) on the 15th and last days of the months of March, June, September and December, 1919 as noted in the following schedule:

The schedule set out showed honorariums in the total amount of $12,396.

The following action was taken by the board of directors on March 10, 1920, as shown by the minutes of that date:

The meeting was called to consider and act upon salary increases and honorariums. Upon motion unanimously carried salaries and wages were ordered . as recorded in these minutes effective March 1st, 1920. Honorariums as shown in schedule were declared payable to employees of record in equal installments (one-eighth of amount specified) on the 15th and last days of the month of March, June, September and December 1920.

The schedule set forth honorariums in the total amount of $21,990.

Petitioner kept its books on the accrual basis. The books were not closed at the end of the fiscal year, but were kept open until the inventory had been taken and the approximate amount of profit ascertained. The amount of the bonus to be distributed among employees was then determined and accrued on the books as of January 31, the last day of the preceding fiscal year. Petitioner paid the bonuses in quarterly installments following the close of each fiscal year because of the fact that it operated largely on borrowed capital and would have found it inconvenient to pay each bonus in full at the time authorized. Of the amount of the bonus voted for the fiscal year ended January 31, 1919, the sum of $108 was not paid to the employees, and was thereafter reported by the petitioner as income in its tax return for the subsequent year. Also, the sum of $592.50 authorized as a part of the bonus to be paid to the employees for the fiscal year ended January 31, 1920, was not so paid and was reported by the petitioner as income in its tax return for the following year.

During the years 1909 and 1910, petitioner purchased merchandise from the General Incandescent Lamp Co., of Cleveland, Ohio. At March 31, 1910, the account of the lamp company on the books of petitioner showed a credit balance of $9,118.16. Petitioner thereto-

fore had also purchased merchandise from the United States Incandescent Lamp Co., of St. Louis. Both lamp companies were members of the Lamp Association, and because of some alleged disagreement between the lamp companies, the General Incandescent Lamp Co. thereafter refused to make further sales to petitioner. Petitioner thereupon refused to pay to said last named lamp company the balance of $9,118.16 due it, and asserted a counterclaim against the lamp company in excess of that amount on account of loss of business or profits. Petitioner's counterclaim against the lamp company was based to some extent on defects in merchandise and other matters of minor importance, but was asserted principally because of alleged loss of profits. Litigation was finally instituted between the General Incandescent Lamp Co. and petitioner, which was terminated in May, 1918, under a compromise agreement by which the petitioner accepted as damages in settlement of its counterclaim 50 per cent of the amount shown on its books to be due to the lamp company, and the lamp company accepted a like amount in settlement of petitioner's liability to it for merchandise. Pursuant to the compromise agreement, petitioner paid to the lamp company, through its attorney, on May 2, 1918, in final settlement, the sum of $4,559.08. Petitioner carried the credit balance of $9,118.16 in the account of the lamp company on its books from March 31, 1910, until May 2, 1918, on which last-mentioned date it charged against said balance the amount of $4,559.08, represented by its check issued in final settlement, thus leaving a credit balance of the same amount in said account. On May 13, 1918, petitioner charged against the lamp company account, the amount of $188.71 paid for court costs, leaving a balance of $4,370.37, which amount it transferred by appropriate entries to its profit and loss account, thus closing the lamp company's account, and showing the net balance last mentioned as a credit to profit and loss. Thereafter, a debit item of $4,370.37 was entered in the profit and loss account as of January 31, 1919, and the surplus and undivided profits account was credited with a like amount, thus transferring the amount from profit and loss to surplus.

OPINION.

TRAMMELL: The material facts in these proceedings are undisputed, and the pleadings raise only two issues for decision here, which will be considered in the order presented.

The first issue relates to deductions, under section 234 (a) (1) of the Revenue Act of 1918, of certain bonuses paid by the petitioner to its employees. Petitioner kept its books on the accrual basis, and subsequent to the close of each fiscal year involved, by formal action of the board of directors authorized the payment of a bonus to employees in quarterly installments during the following calendar year.

The amount of each bonus thus authorized was accrued on petitioner's books as of January 31, the last day of the preceding fiscal year, and claimed as a deduction for that year. The bonus authorized was payable only to employees of record at the several times scheduled for payment. The amount of each bonus accrued but not actually paid to its employees was thereafter reported by petitioner as income in its tax return for the subsequent year. Respondent disallowed the deduction claimed by the petitioner of the amount accrued on its books for the year of accrual, but allowed the amounts actually paid to the employees as deductions for the years in which they were authorized and paid. Petitioner contends that it is entitled to a deduction of the amount of each bonus accrued, for the year of accrual. Respondent contends that petitioner incurred no legal obligation to pay the bonuses in question in the respective years in which they were accrued on the books, and that the bonuses were not solely for services actually rendered during the year in which they were accrued.

The Revenue Act of 1918 provides in pertinent part as follows:

SEC. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *.

It is undisputed that the amounts involved in these proceedings were paid or incurred as compensation for personal services in carrying on a trade or business, and were reasonable. Were they incurred in the respective taxable years for which they were claimed as deductions by petitioner?

The principles stated in *Appeal of Van De Kamps Holland Dutch Bakers*, 2 B. T. A. 1247, are applicable to the instant case. During the respective taxable years in question, no binding agreement was entered into between the petitioner and its employees for the payment of a bonus. The amount of the bonus was not determined nor any definite method fixed by which it could be computed. The only basis disclosed by the evidence to support even a moral obligation was the rather vague promise of the directors that if the business was prosperous the bonus would be a liberal amount. Furthermore, the amount of the bonus allotted to each employee for the preceding fiscal year was payable only in the event such employee remained in the service of petitioner until the several dates scheduled for payment during the succeeding year. Under these circumstances, the promise of the directors did not create an obligation legally enforceable against petitioner, and it could not accrue on its books for the preceding fiscal year a moral obligation of such an indefinite and contingent nature which would thereby justify a deduction of the

accrued amount. We must hold, therefore, that petitioner is only entitled to deductions of the amounts of the bonuses actually paid to its employees for the respective years in which they were authorized by the board of directors. The bonuses were to be paid with a view to services in 1920 and as an inducement for the employees to remain with the company. The action of respondent in respect of the first issue is affirmed.

The second issue is predicated upon the action of the respondent in adding to petitioner's income for the fiscal year ended January 31, 1919, the amount of $4,370.37 upon the ground that it had been received by the petitioner in that year as compensation for damages to its business on account of loss of profits. Petitioner purchased merchandise from the General Incandescent Lamp Co. from time to time during 1909 and 1910. At March 31, 1910, the account of the lamp company on petitioner's books showed a credit balance of $9,118.16. The lamp company thereafter refused to make further sales to petitioner and petitioner refused to pay to the lamp company the balance due it for merchandise, at the same time asserting a counterclaim against the lamp company in excess of said balance. Litigation arose over the matter, which was finally adjusted in May, 1918, under a compromise agreement by which petitioner paid to the lamp company 50 per cent of its account, or the sum of $4,559.08, in full settlement, thus retaining an equal amount as damages for loss of profits. Petitioner paid court costs in the amount of $188.71, leaving a balance of $4,370.37 of which it received the benefit and advantage during the taxable year. Petitioner contends that when its counterclaim arose against the lamp company, the credit balance of $9,118.16 shown on the lamp company's account, which theretofore had represented a liability, became in effect a reserve for a contingent liability, and that the amount of such reserve should be included in its invested capital. Also that the amount of $4,559.08 paid by it to the lamp company is deductible as a business expense.

An extended discussion of petitioner's first contention seems to us unnecessary. Its liability to the lamp company was not changed into an asset by the mere assertion of the counterclaim. It very properly continued to carry the lamp company account on its books as a liability from March 31, 1910, to May 2, 1918, when the final settlement was made. Nor was the lamp company's account changed into the nature of a reserve for a contingent liability by the assertion of petitioner's counterclaim. The petitioner did not set up on its books such a reserve. It follows that petitioner is not entitled to include the amount in question in the computation of invested capital.

The second contention of petitioner that the amount paid by it to the lamp company in 1918 represents a deductible business expense must likewise be denied. The net amount of $4,370.37 of which the

petitioner received the benefit in the final settlement constituted income to it in the year in which received. William Henry Nolker, president of petitioner, testified at the hearing with reference to this matter as follows:

A. * * * Our counterclaim against the General Incandescent Lamp Co. for losses sustained, that is to say losses in business—our business in lamps dwindled by reason of this supertrust refusing to sell us goods.

Q. Just proceed and describe all of the negotiations.

A. Well, our attorney then took the matter in hand and, as I said before, our counterclaim was far in excess of the amount of money we owed them according to our books and eventually the thing was compromised and we accepted as damages 50 per cent of the amount shown on our books.

The MEMBER. You mean you had a claim against them?

The WITNESS. Yes, we had a claim against them not only under the Sherman Anti-Trust Act, but also a claim for loss in business—a material claim—that is loss of profits.

The contentions of petitioner with respect to the second issue rest wholly upon the false premise that its counterclaim set up in 1910 wiped out its liability to the lamp company. The fallacy of such contentions is self-evident, since the lamp company declined to recognize the justness of the counterclaim and instituted litigation, which was not finally settled until May, 1918. At that time petitioner discharged its liability of $9,118.16 to the lamp company by the payment of $4,559.08. The difference between the amount paid and the liability discharged, less the expense item of $188.71, or the net amount of $4,370.37, represents the compensation received by petitioner for loss of profits. Accordingly, the action of respondent in adding this amount to petitioner's income for the fiscal year ended January 31, 1919, is approved.

*Judgment will be entered for the respondent.*

Considered by MORRIS, MURDOCK, and SIEFKIN.